## BEFORE THE UNITED STATES JUDICIAL
## PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: Local TV Advertising Antitrust Litigation | MDL Docket No. |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFF CLAY MASSEY & ASSOCIATES, P.C. FOR THE TRANSFER OF RELATED ACTIONS TO THE NORTHERN DISTRICT OF ILLINOIS FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407

Plaintiff Clay, Massey & Associates, P.C. ("Plaintiff"), in the action captioned *Clay, Massey & Associates, P.C., et al. v. Gray Television, Inc., et al.*, Case No. 18-cv-5197 (N.D. Ill. July 30, 2018), respectfully submits this Memorandum of Law in support of its Motion pursuant to 28 U.S.C. § 1407 to transfer and coordinate or consolidate related actions to the Northern District of Illinois.

## BACKGROUND

On July 27, 2018, the Law Offices of Peter Miller, P.A. filed a lawsuit in the District of Maryland against Sinclair Broadcast Group, Inc. ("Sinclair"), Tribune Media Company ("Tribune Media"), and Tribune Broadcasting Company, LLC, alleging an unlawful conspiracy among these and other John Doe defendants throughout the United States to fix prices for local television advertisement time. *See Law Offices of Peter Miller, P.A. v. Sinclair Broadcast Group, Inc., et al.*, Case No. 18-cv-02316-TDC (D. Md. July 27, 2018), Dkt. 1. The next business day, Plaintiff filed the instant suit in the Northern District of Illinois alleging a price-fixing conspiracy also relating to the local television advertising time market against Sinclair, Tribune Media, Gray Television,

Inc., Hearst Corp., Nexstar Media Group, Inc., and Tegna Inc.

Given the facts and circumstances surrounding these two cases, it is likely that other related actions will be filed imminently (together with the first filed actions, the "Related Actions"). Transfer of the Related Actions to one forum is essential so that they may be centralized for pretrial proceedings. This is necessary to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judges in the two separate federal courts in which the Related Actions have been filed. Thus, transfer and coordination or consolidation will further the convenience of the parties and witnesses and promote efficiency and judicial economy.

The most appropriate forum for centralization of the Related Actions is the Northern District of Illinois because:

1.      There is a strong nexus between the Northern District of Illinois and the facts alleged in the Related Actions;

2.      The Northern District of Illinois has considerable expertise in dealing with issues presented by complex multidistrict litigation ("MDL"), particularly antitrust litigation; and

3.      The Northern District of Illinois is a convenient and accessible forum for potential witnesses, counsel, and the parties, including for Tribune Media, which is headquartered in the district.

The Related Actions should, therefore, be transferred and coordinated or consolidated in the Northern District of Illinois for pretrial proceedings pursuant to 28 U.S.C. § 1407.

## **ARGUMENT**

### I.      **Transfer and Coordination or Consolidation in One District Is Appropriate**

28 U.S.C. § 1407 provides that "[w]hen civil actions involving one or more common

questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). The Judicial Panel on Multidistrict Litigation shall order such transfer "upon its determination that transfers for such proceedings will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." *Id*. Here, these factors strongly militate in favor of transferring the Related Actions to the Northern District of Illinois for coordinated or consolidated pretrial proceedings.

## A.   The Related Actions Share Common Questions of Law and Fact

The Related Actions share common questions of law and fact since they allege comparable core allegations against many of the same defendants based on similar transactions and events. *See, e.g.*, *In re UnumProvident Corp. Sec., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003) (centralization appropriate where "all actions [could] be expected to focus on a significant number of common events, defendants, and/or witnesses" and "core factual allegations" were consistent among the actions). "Section 1407 does not," however, "require a complete identity or even a majority of common factual issues as a prerequisite to centralization." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1363 (J.P.M.L. 2014) (quoting *In re: Park W. Galleries, Inc., Litig.*, 887 F. Supp. 2d 1385, 1385 (J.P.M.L. 2012)).

The individual Complaints in the Related Actions involve questions of fact that are not merely common, but virtually identical. In the Related Actions, the Complaints focus on the same alleged collusive anticompetitive conduct by the Defendants: unlawfully conspiring with each other to fix prices of local television advertising time in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. In comparing the allegations of the Related Actions, common questions abound,

including, but not limited to:

(a) Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain, or stabilize the prices of local television advertising time;

(b) The identity of the participants in the conspiracy;

(c) The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d) Whether the alleged conspiracy violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

(e) Whether the alleged conduct of Defendants and their co-conspirators caused injury to the business or property of Plaintiff and the members of the Class;

(f) The effect of the alleged conspiracy on the cost of local television advertising time during the Class Period;

(g) Whether Defendants and their co-conspirators fraudulently concealed the existence of their anticompetitive conduct from the Plaintiff and the members of the Class;

(h) The appropriate injunctive and related equitable relief for Plaintiff and the Class; and

(i) The appropriate class-wide measure of damages.

Each of these common questions is at issue in the Related Actions.

The Related Actions name partially overlapping groups of Defendants, allege the same type of price-fixing conspiracy in the same product and geographical markets, arise from a common set of occurrences, and present substantially similar factual and legal issues. The overlap is more than sufficient to merit transfer and coordination or consolidation pursuant to Section 1407. *See*, *e.g.*, *In re Intel Corp. Microprocessor Antitrust Litig.*, 403 F. Supp. 2d 1356, 1357 (J.P.M.L. 2005) (holding that transfer was appropriate where common defendant allegedly monopolized the market for microprocessing chips); *In re Pineapple Antitrust Litig.*, 342 F. Supp. 2d 1348, 1349

(J.P.M.L. 2004) (holding that transfer was appropriate where related actions alleged common defendant had monopolized the market for extra-sweet pineapples by fraudulently enforcing a patent); *In re Pharm. Indus. Average Wholesale Price Litig.*, 237 F. Supp. 2d 1377, 1379 (J.P.M.L. 2002) (holding that, to the extent non-common issues arise, transfer can have the "salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that [] allows discovery with respect to any common-issues to proceed concurrently with discovery on common issues").

**B.    Transfer Will Promote Convenient, Just, and Efficient Litigation of the Related Actions**

The Panel will order transfer where it would "eliminate duplicative discovery; prevent inconsistent pre-trial rulings (particularly with respect to the issue of class certification); and conserve the resources of the parties, their counsel and the judiciary." *In re U.S. Foodservice, Inc., Pricing Litig.*, 528 F. Supp. 2d 1370, 1371 (J.P.M.L. 2007). Plaintiffs in both Related Actions will seek similar discovery from Sinclair and Tribune Media to develop their common allegations and legal theories as to the alleged price-fixing conspiracy among Defendants. The benefits to Defendants are obvious as well, as they would not need to submit to repetitive and duplicative depositions, document discovery, discovery-related motion practice, and class certification briefing. *See, e.g.*, *In re: Pilot Flying J Fuel Rebate Contract Litig. (No. II)*, 11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014); *In re Fresh & Process Potatoes Antitrust Litig.*, 744 F. Supp. 2d 1381, 1382 (J.P.M.L. 2010).

That the Related Actions are putative class actions only strengthens the argument for transferring them for coordination or consolidation as an MDL. "The need to eliminate" the risk of inconsistent class certification rulings "presents a highly persuasive reason favoring transfer under Section 1407." *In re Roadway Exp., Inc. Emp't Practices Litig.*, 384 F. Supp. 612, 613

(J.P.M.L. 1974). *See also In re: Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, 26 F. Supp. 3d 1394, 1395 (J.P.M.L. 2014) ("Centralization will . . . prevent inconsistent pretrial rulings (particularly as to class certification) . . ."); *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, 416 F. Supp. 2d 1346, 1347 (J.P.M.L. 2006) (ordering transfer "in order to eliminate duplicative discovery; prevent inconsistent pretrial rulings, particularly with respect to class certification . . ."); *In re Multidistrict Private Civ. Treble Damage Litig.*, 298 F. Supp. 484, 493 (J.P.M.L. 1968) (explaining that § 1407 was designed to prevent "pretrial chaos" resulting from "conflicting class action determinations"). In short, the filing of the Related Actions alleging the same price-fixing conspiracy among at least some of the same defendants to restrain the same market in violation of the same federal statutory provision is an ideal circumstance for a transfer order pursuant to Section 1407.

## II.      The Northern District of Illinois Is the Most Appropriate Forum

The Northern District of Illinois is the most appropriate forum for a coordinated or consolidated MDL of the Related Actions, since (1) it contains a more robust media market that likely played a larger role in the facts giving rise to this litigation than does the Baltimore market overlapping in part with the District of Maryland; (2) Northern District courts have demonstrated expertise in complex MDLs, including and perhaps especially in the antitrust arena; and (3) it is a convenient and accessible forum for witnesses, counsel, and the parties.

### A.      Chicago's Significance as a Media Hub

The Chicago media market is the nation's third largest, after those of New York and Los Angeles.[1] Baltimore's is ranked 26th.[2] Expert witnesses with knowledge of the economics of the television industry are therefore likelier to reside in or near the Northern District of Illinois than in

---

[1] Nielsen Media 2017-2018 Local Market Estimates, http://www.tvjobs.com/cgi-bin/markets/market2.cgi.
[2] *Id.*

or near the District of Maryland; and as suggested above, a witness who must travel from California—as some prominent television industry experts might—is better served by a Chicago forum than a Baltimore one. Chicago also dominates Baltimore in other types of media that might prove to be useful points of comparison for antitrust economic analysis, such as print media, radio, and film.

**B.      The Northern District's Judicial Expertise**

Perhaps due to its preeminence as a financial hub and the interest and expertise of several Seventh Circuit judges in economic analysis of law, the Northern District of Illinois has been entrusted to manage many antitrust MDLs, including three that are currently pending.[3] These include the well-known antitrust class actions concerning amino acid lysine, sulfuric acid, plasma-derivative protein therapies, potash, text messaging, cheese, broiler chicken, and brand-name prescription drugs.[4] This depth of experience will serve the interests of the parties and the as-yet unidentified absent Class members, given the expansive role of an MDL forum in presiding over and resolving virtually all pretrial proceedings, including dispositive motions, discovery, and class certification. Even aside from its obvious nexus to the facts and evidentiary record to be developed in this case, there are few, if any, judicial forums better equipped to manage a sprawling antitrust MDL than the Northern District of Illinois.

**C.      Convenience and Accessibility to the Parties and Witnesses**

Defendants' conspiracy to fix prices in the local television advertising market injured Plaintiff and Class members throughout the United States. Thus, a forum with accessible

---

[3] United States Judicial Panel on Multidistrict Litigation, MDL Statistics Report – Docket Type Summary, http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_Type-July-16-2018.pdf.
[4] *See* 95-cv-7679, MDL No. 1083; 03-cv-4576, MDL No. 1536; 09-cv-7666, MDL No. 2109; 08-cv-6910, MDL No. 1996; 08-cv-7082, 09-cv-2192, MDL No. 1997; 09-cr-3690, MDL No. 2031; 16-cv-8637, MDL No. 2838; 94-cv-0897, MDL No. 997.

transportation located near the middle of the country is superior to other, less accessible venues that may be more geographically distant from the location of many Class members, witnesses, parties, and counsel. The Northern District of Illinois contains two international airports, O'Hare International Airport and Chicago Midway International Airport, the former of which is the third busiest airport in the country by number of passengers and the fifth busiest worldwide.[5] Chicago is also considerably better served as a railway hub (via Amtrak routes) than is Baltimore.

For purposes of litigating a sprawling nationwide class action that likely includes fact witnesses and experts in distant but populous states like California and Texas, a Midwestern forum is clearly superior to one on the Eastern Seaboard. Further, Defendant Tribune Media is headquartered in Chicago. Plaintiff was first alerted to the possibility of a price-fixing conspiracy among Defendants when news broke of a U.S. Department of Justice investigation into possible antitrust violations in the domestic television advertising market, an investigation in which Tribune Media was one of the first implicated players. Tribune Media is far from a minor player in the media industry; according to Tribune Media, it is "the largest independent station group in the United States."[6] Its local television stations include FOX affiliates, CW Network affiliates, CBS affiliates, ABC affiliates, MyNetworkTV affiliates, NBC affiliates, and independent television stations; it owns 43 broadcast television stations in approximately 35 cities, including the nationally broadcast WGN America network. Given Tribune Media's likely prominence in the conspiracy, it is probable that significant numbers of witnesses and relevant documents are presently located in the Chicago area. This makes the Northern District of Illinois an ideal forum from the vantage of convenience to the parties and witnesses in conducting discovery, and

---

[5]   Port Authority of New York and New Jersey, "2017 Airport Traffic Report," https://www.panynj.gov/airports/pdf-traffic/ATR2017.pdf.

[6]   Tribune Media, "Tribune Broadcasting," http://www.tribunemedia.com/our-brands/tribune-broadcasting/.

evidences the Northern District's strong nexus to Plaintiff's allegations.

## **CONCLUSION**

Accordingly, Plaintiff respectfully requests that the Panel grant its Motion to transfer the Related Actions to the Northern District of Illinois for coordinated or consolidated pretrial proceedings.

Dated: July 31, 2018

By: */s/ Hollis Salzman*
Hollis Salzman
Kellie Lerner
Nahid Shaikh
Nathaniel Ament-Stone
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Tel.: (212) 980-7400
Fax: (212) 980-7499
*hsalzman@robinskaplan.com*
*klerner@robinskaplan.com*
*nshaikh@robinskaplan.com*
*nament-stone@robinskaplan.com*

Craig K. Wildfang
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN
(612) 349-8500
*kcwildfang@robinskaplan.com*

Aaron M. Sheanin
Tai S. Milder
**ROBINS KAPLAN LLP**
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
(650) 784-4040
*asheanin@robinskaplan.com*
*tmilder@robinskaplan.com*

Steven A. Kanner
Michael J. Freed
Robert J. Wozniak
**FREED KANNER LONDON & MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
(224) 632-4500
*skanner@fklmlaw.com*
*mfreed@fklmlaw.com*
*rwozniak@fklmlaw.com*

*Counsel for Plaintiff Clay, Massey & Assoc. P.C., N.D. Ill. 18-cv-05197*