# BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: Local TV Advertising Antitrust Litigation | MDL Docket No. 2867 |

## RESPONSE TO MOTION TO TRANSFER ACTIONS TO THE NORTHERN DISTRICT OF ILLINOIS

Plaintiff Kevin Forbes ("Plaintiff"), in the action captioned *Forbes v. Gray Television, Inc., et al.*, Case No. 18-cv-5708 (N.D. Ill. August 21, 2018), respectfully submits this response in support of the Motion by Plaintiff Clay, Massey & Associates, P.C. ("Clay") pursuant to 28 U.S.C. §1407 to transfer and coordinate or consolidate related actions to the Northern District of Illinois.

## BACKGROUND

To Plaintiff's knowledge, there are approximately six actions pending on behalf of classes of purchasers of local television advertising from Defendants (collectively, the "Related Actions") in two district courts. All of the Complaints alleged the same collusive anticompetitive conduct by the Defendants – conspiring to fix prices of local television advertising time in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. §1.

Plaintiff respectfully submits that, with respect to the Related Actions, the statutory prerequisites of §1407(a) have been satisfied and the Related Actions and any subsequently filed actions should be transferred to a single judicial district for coordination of pre-trial proceedings.

Coordination or consolidation would enable streamlined discovery, prevent overlapping and potentially inconsistent pretrial rulings, and conserve the resources of the courts, the parties,

and their counsel.  Thus, transfer and coordination or consolidation will further the convenience of the parties and witnesses and promote efficiency and judicial economy.

Plaintiff further submits that the Related Actions should be transferred for pre-trial proceedings in the Northern District of Illinois, which is where four of the six actions are pending and where relevant documents are maintained and witnesses likely reside.  Significantly, the Northern District of Illinois is the home of one of the Defendants, Tribune Media Company ("Tribune").  Given that the other Defendants are located in four other districts; New York, Maryland, Virginia and Georgia, Plaintiff submits that the Northern District of Illinois is the best choice over any other competing jurisdiction.  Moreover, the jurists in the Northern District of Illinois have considerable expertise in dealing with complex antitrust actions and multidistrict litigation, the docket conditions are as favorable as other potential transferee courts, and the Northern District of Illinois is a central and convenient location for all parties.

**I.  ARGUMENT**

    **A.  The Related Actions and Any Tag-Along Actions Are Appropriate for Transfer and Coordination Pursuant to 28 U.S.C. §1407(a)**

Transfer and coordination are permitted if civil actions pending in different districts "involv[e] one or more common questions of fact" and this Panel determines that transfer will further "the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions."  28 U.S.C. §1407(a).  "The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts."  *Manual for Complex Litigation*, §20.131 (4th ed. 2004).  Transfer and coordination for pretrial proceedings would achieve those objectives in the present litigation, and are therefore appropriate here.

### 1. The Related Actions Involve One or More Common Questions of Fact

Transfer and coordination is appropriate here as the Related Actions are based upon the same facts and bring claims against the same Defendants. The factual questions common to the financial institution cases include, but are not limited to:

i. whether Defendants and their co-conspirators and agents engaged in a conspiracy with each other to share confidential information regarding local television advertising rates;

ii. whether Defendants' conspiracy impacted the prices sold to the Class;

iii. the length of the conspiracy;

iv. whether Defendants intentionally concealed their scheme;

v. whether Defendants' conduct is a *per se* violation of Section 1 of the Sherman Act.

vi. whether the conduct of Defendants and their co-conspirators caused injury to the business or property of Plaintiff and the members of the Class; and

vii. the measure and amount of damages sustained by Plaintiff and the Class.

Each of these common questions is at issue in the Related Actions. Moreover, each of the Related Actions concerns the same Defendants, the same general conduct, and the same general events, and each of the plaintiffs seek to represent generally the same proposed classes. Thus, the "common questions of fact" criterion is satisfied pursuant to §1407(a). *See In re Bausch & Lomb Inc. Contact Lens Solution Prods. Liab. Litig.*, 444 F. Supp. 2d 1336, 1338 (J.P.M.L. 2006) (coordinating cases under §1407 that shared factual allegations).

### 2. Transfer and Coordination of the Related Actions to the Northern District of Illinois Will Further the Convenience of the Parties and the Witnesses

Resolution of these common issues in a single forum will further the convenience of all parties and witnesses. *See* 28 U.S.C. §1407(a). Because the Related Actions are similar, if not identical, in factual allegations and questions, the plaintiffs in these actions will require

depositions of the same persons and discovery of the same documents. Transfer and coordination of the Related Actions to a single federal district court will mitigate these problems by enabling a single judge to manage discovery and the parties to coordinate their efforts. This will reduce litigation costs and minimize inconvenience to the parties and witnesses, to the benefit of all litigations, third parties, and the courts. *See In re Enfamil Lipil Mktg. & Sales Practices Litig.*, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011).

### 3. Coordination Will Promote the Just and Efficient Conduct of the Related Actions

Coordination and transfer will also promote the just and efficient resolution of the Related Actions by eliminating the risk of duplicative discovery and the related threat of repetitive and inconsistent pretrial rulings. Discovery will be more effectively and efficiently managed, while the resources of the parties, attorneys, and judicial system are conserved. Coordination is therefore necessary to prevent inconsistent pretrial rulings on many central issues, which would present substantial problems because of the consistency in factual and legal allegations between the Related Actions. *See In re LLRICE 601 Contamination Litig.*, 466 F. Supp. 2d 1351, 1352 (J.P.M.L. 2006).

#### a. The Northern District of Illinois Has Significant Experience in Multidistrict Litigation

The Northern District of Illinois has substantial experience in conducting numerous centralized antitrust class actions. Indeed, the Court has handled some of the most significant antitrust MDLs in history. *See, e.g.*, *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, MDL No. 2109, 657 F. Supp. 2d 1371 (J.P.M.L 2009); *In re Dairy Farmers of America, Inc. Cheese Antitrust Litig.*, MDL No. 2031, 626 F. Supp. 2d 1348 (J.P.M.L 2009); *In re Text Messaging Antitrust Litig.*, MDL No. 1997, 588 F. Supp. 2d 1372 (J.P.M.L 2008); *In re Potash*

*Antitrust Litig. (No. II)*, MDL No. 1996, 588 F. Supp. 2d 1364 (J.P.M.L 2008*); In re Aftermarket Filters Antitrust Litig.*, MDL No. 1957, 572 F. Supp. 2d 1373 (J.P.M.L. 2008); *In re BP Prods. N. Am., Inc. Antitrust Litig. (No. II)*, MDL No. 1946, 560 F. Supp. 2d 1377 (J.P.M.L. 2008); *In re Sulfuric Acid Antitrust Litig.*, No. 1536, 270 F. Supp. 2d 1379 (J.P.M.L. 2003); *In re Amino Acid Lysine Antitrust Litig.*, MDL No. 1083, 910 F. Supp. 696 (J.P.M.L. 1995); *In re Brand Name Prescription Drugs Antitrust Litig.*, MDL No. 997, 867 F. Supp. 1338 (J.P.M.L. 1994); *In re Gas Meter Antitrust Litig.*, MDL No. 360, 464 F. Supp. 391 (J.P.M.L. 1979); *In re Uranium Industry Antitrust Litig.*, MDL No. 342, 466 F. Supp. 958 (J.P.M.L. 1979); *In re Folding Carton Antitrust Litig.*, MDL No. 250, 415 F. Supp. 384 (J.P.M.L. 1976); *In re Commodities Exchange Rate Antitrust Litig.*, MDL No. 99, 342 F. Supp. 1405 (J.P.M.L. 1972); *In re Government Auto Fleet Sales Antitrust Litig.*, MDL No. 65, 328 F. Supp. 218 (J.P.M.L. 1971); *In re Ampicillin Antitrust Litig.*, MDL No. 50, 315 F. Supp. 317 (J.P.M.L. 1970); *In re Admission Tickets*, MDL No. 21, 302 F. Supp. 1339 (J.P.M.L. 1969).

In addition to the prior actions that have been transferred by the Panel to the Northern District of Illinois, currently there are three antitrust MDLs that are currently pending before Judge Manish S. Shah, Judge Harry D. Leinenweber and Judge Robert M. Dow, Jr.[1]

This depth of experience will serve the interests of the parties and the Class and demonstrates why the Northern District of Illinois is well equipped to manage this complex antitrust MDL.

---

[1] United States Judicial Panel on Multidistrict Litigation, MDL Statistics Report – Docket Type Summary, http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_Type-August-15-2018.pdf (identifying *In re Dealer Management Systems Antitrust Litigation*, MDL 2817, *In re Opana ER Antitrust Litigation*, MDL 2580 and *In re Chicago Board Options Exchange Volatility Index Manipulation Antitrust Litigation*, MDL 2842 as currently pending MDL dockets pending in the Northern District of Illinois).

### b. Federal Judicial Center Statistics Support the Northern District of Illinois as Transferee Court

The most recent case management statistics from the Federal Judicial Center show that the Northern District of Illinois would be an appropriate choice for the Panel.

Specifically, as of June 30, 2018, there were 16,981 cases pending or 436 civil actions per judge in the Northern District of Illinois, and the median time in months from filing to disposition in civil cases was 7.5 months, which is well within or below the average of other jurisdictions, including the District of Maryland, where the median time in months from filing to disposition in civil cases was 7.8 months.[2] Moreover, the number of civil filings per judgeship in the Northern District of Illinois, with 436 civil actions and 444 weighted filings per judge, is comparable to the District of Maryland, wherein there are 411 civil actions and 491 weighted filings per judge. *Id.* Thus, docket conditions are comparable, if not favorable, in the Northern District of Illinois to those in the District of Maryland.

### c. The Northern District of Illinois Has Facilities Suited to the Demands of This Multidistrict Litigation

The Panel has previously recognized that the Northern District of Illinois "is equipped with the resources that this complex litigation is likely to require."[3] The Court sits in the Everett M. Dirksen U.S. Courthouse, which is among the largest and most sophisticated in the country. The 30-story glass and steel high-rise recently underwent a $22.4 million renovation project, which, among other things, added four two-story courtrooms and four magistrate courtrooms, as well as chambers, offices, and other facilities. The courthouse has conference rooms seating up

---

[2] http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2018.pdf.

[3] *See, e.g.*, *In re Sulfuric Acid Antitrust Litig.*, 270 F. Supp. 2d 1379, 1380 (2003) ("In concluding that the Northern District of Illinois is an appropriate forum for this docket, we note that the Illinois district . . . is equipped with the resources that this complex antitrust docket is likely to require.").

to 60 people theater-style with wireless microphone systems, conference phones, computer data outlets, white boards, ceiling-mounted projectors and screens, and digital video capability.[4]

### d. The Northern District of Illinois Provides an Accessible Metropolitan Venue in Which to Host This Multidistrict Litigation

The Panel has long recognized both that there is "something to be said for the convenience of a geographically central forum,"[5] and also that the "Northern District of Illinois is a convenient, central forum."[6] The Northern District of Illinois is home to two international airports: O'Hare and Midway. These airports offer a number of daily non-stop flights throughout the United States and are a hub to a number of major airlines, which will make travel to and from the proceedings in this case more convenient. As in so many other cases, the Northern District of Illinois "provides a convenient and accessible forum for this litigation in which actions have been filed throughout the country regarding a product marketed

---

[4] www.gsa.gov/emdct.

[5] *In re Library Editions of Children's Books*, MDL Nos. 2, 4, 5, 6 & 7, 297 F. Supp. 385, 387 (J.P.M.L. 1968) (MDL transfer to Northern District of Illinois).

[6] *In re Aimster Copyright Litig.*, 177 F. Supp. 2d 1380, 1382 (J.P.M.L. 2001) (MDL transfer to Northern District of Illinois). *See also In re Refund Anticipation Loan Litig.*, 856 F. Supp. 2d 1336, 1337 (J.P.M.L. 2012) (Northern District of Illinois is "convenient and centrally located"); *In re Capital One Tel. Consumer Prot. Act Litig.*, 908 F. Supp. 2d 1366, 1368 (J.P.M.L. 2012) ("Northern District of Illinois offers a relatively central and convenient forum for the involved parties and counsel"); *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1352 (J.P.M.L. 2012) (Northern District of Illinois "provides a convenient and accessible forum for this litigation in which actions have been filed throughout the country regarding a product marketed nationwide"); *In re Unified Messaging Solutions LLC Patent Litig.*, 883 F. Supp. 2d 1340, 1342 (J.P.M.L. 2012) (Northern District of Illinois is "easily accessible and centrally-located"); *In re Innovatio IP Ventures, LLC, Patent Litig.*, 840 F. Supp. 2d 1354, 1355 (J.P.M.L. 2011) (Northern District of Illinois is a "readily accessible district"); *In re JP Morgan Chase Bank Home Equity Line of Credit Litig.*, 716 F. Supp. 2d 1363, 1364 (J.P.M.L. 2010) ("Northern District of Illinois provides a convenient forum"); *In re Text Messaging Antitrust Litig.*, 588 F. Supp. 2d 1372, 1373 (J.P.M.L. 2008) (Northern District of Illinois is a "relatively central forum for this nationwide litigation"); *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, 408 F. Supp. 2d 1354, 1355 (J.P.M.L. 2005) (Northern District of Illinois is a "geographically central district [which] will be a convenient location for a litigation already nationwide in scope"); *In re Ocwen Fed. Bank FSB Mortg. Servicing Litig.*, 314 F. Supp. 2d 1376, 1379 (J.P.M.L. 2004) ("Illinois district is geographically centrally located for these actions which are pending throughout the United States"); *In re McDonald's Corp. Promotional Games Litig.*, 192 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (Northern District of Illinois is a "geographically central district [and] will be a convenient location for a litigation already nationwide in scope"); *In re Am. Online, Inc., Version 6.0 Software Litig.*, 162 F. Supp. 2d 690, 691 (J.P.M.L. 2001) (Northern District of Illinois is a "geographically central district [that]will be a convenient location for a litigation already nationwide in scope"); *In re "Factor VIII or IX Concentrate Blood Products" Prods. Liab. Litig.*, 853 F. Supp. 454, 455 (J.P.M.L. 1993) ("Chicago is a geographically central location for this nationwide litigation").

nationwide."[7] In considering the convenience and accessibility of various transferee courts, the Northern District of Illinois is clearly a central and convenient location for this MDL.

## **CONCLUSION**

Accordingly, for the reasons set forth herein, Plaintiff respectfully requests that the Panel grant Clay's Motion to transfer the Related Actions to the Northern District of Illinois for coordinated or consolidated pretrial proceedings.

Dated: August 22, 2018

/s/ Joseph P. Guglielmo
Joseph P. Guglielmo
Thomas K. Boardman
SCOTT+SCOTT
ATTORNEYS AT LAW LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
jguglielmo@scott-scott.com
tboardman@scott-scott.com

Christopher M. Burke
Walter W. Noss
SCOTT+SCOTT
ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
cburke@scott-scott.com
wnoss@scott-scott.com

E. Kirk Wood
WOOD LAW FIRM, LLC
P. O. Box 382434
Birmingham, AL 35238-2434
Telephone: 205-908-4906
Facsimile: 866-747-3905
ekirkwood1@bellsouth.net

*Attorneys for Plaintiff*

---

[7] *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1352 (J.P.M.L. 2012) (MDL transfer to Northern District of Illinois).