BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LIGIATION

| | |
|---|---|
| In re: Local TV Advertising Antitrust Litigation | MDL Docket No. 2867 |

**RESPONSE IN OPPOSITION TO MOTION FOR THE TRANSFER OF RELATED ACTIONS TO THE NORTHERN DISTRICT OF ILLINOIS FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407**

Pursuant to Rules 6.1(c) and 6.2(e) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Interested Party Randal S. Ford d/b/a Ford Firm ("Plaintiff Ford") in the action captioned *Randal S. Ford d/b/a/ Ford Firm v. Sinclair Broadcast Group, Inc., et al.*, Case No. 18-cv-02372-TDC (D. Md. Aug. 2, 2018), respectfully submits this Response in opposition to the Motion of Plaintiff Clay, Massey & Associates, P.C. ("Plaintiff Clay Massey") for Transfer of Actions to the Northern District of Illinois for Coordinated or Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407 (the "Motion"). Plaintiff Ford agrees that the Related Actions,[1] which involve common questions of fact, should be consolidated. However, Plaintiff Ford submits that the District of Maryland is best suited to handle a complex multidistrict antitrust litigation because it provides the most central and convenient venue for efficient adjudication of Plaintiffs' claims.

## BACKGROUND

---

[1] The "Related Actions" are the six actions pending in federal district courts for which Plaintiff Ford seeks consolidation in the District of Maryland.

The Related Actions allege an unlawful conspiracy among the named defendants and their co-conspirators pursuant to which they unlawfully agreed to fix prices for commercials to be aired on broadcast television throughout the United States in violation of the Sherman Act.

On July 26, 2018, The Wall Street Journal reported that the United States Department of Justice ("DOJ") was investigating Defendants and unnamed co-conspirators for antitrust violations relating to price-fixing in the market for the sale of television advertising. The following day, the Law Offices of Peter Miller, P.A. ("Plaintiff Miller") filed the first class action against Sinclair Broadcast Group, Inc. ("Defendant Sinclair), Tribune Media Company ("Defendant Tribune Media"), and Tribune Broadcasting Company, LLC, ("Defendant Tribune Broadcasting") in the District of Maryland – the federal district where Defendant Sinclair is headquartered.

Following the filing of Plaintiff Miller's Complaint, several litigants commenced private antitrust actions based on largely the same facts. To date, six such actions (the "Related Actions") have been filed in two judicial districts—the District of Maryland and the Northern District of Illinois:

| Case | Date Filed | Civil Case No. | District |
|---|---|---|---|
| *Law Offices of Peter Miller, P.A., v. Sinclair Broadcast Group, Inc., et al* | July 27, 2018 | 1:18-cv-02316 | Maryland |
| *Clay, Massey, & Associates, P.C. v. Gray Television, Inc., et al* | July 30, 2018 | 1:18-cv-05197 | Illinois Northern |
| *Randal S. Ford d/b/a/ Ford Firm v. Sinclair Broadcast Group, Inc., et al* | August 2, 2018 | 1:18-cv-02372 | Maryland |
| *Dozier Law Firm LLC v. Gray Television, Inc., et al.* | August 8, 2018 | 1:18-cv-05392 | Illinois Northern |
| *Gibbons Ford, LP v. Gray Television, Inc., et al* | August 14, 2018 | 1:18-cv-05555 | Illinois Northern |
| *Kevin Forbes v. Gray Television, Inc., et al* | August 21, 2018 | 1:18-cv-5708 | Illinois Northern |

Plaintiff Ford agrees that transfer of the Related Actions to a single district is warranted but opposes transfer to the Northern District of Illinois. Plaintiff Ford requests that the Panel instead transfer the Related Actions to the United States District Court for the District of Maryland, pursuant to 28 U.S.C. § 1407.

## ARGUMENT

### I. THE RELATED ACTIONS ARE APPROPRIATE FOR CONSOLIDATION

"When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). Plaintiff Ford agrees that consolidation is warranted given the near-complete overlap of parties, allegations, and claims involved in the Related Actions.

The Related Actions indisputably involve common questions of fact. Each is based on virtually identical allegations that Defendants unlawfully conspired with each other to fix prices of local television advertising time in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiffs in the Related Actions will all have to prove (i) Defendants entered into a conspiracy to fix, raise, maintain, or stabilize the prices of local television advertising time; (ii) the conspiracy caused injury to members of the class; and (iii) the conspiracy resulted in suppression or elimination of competition among Defendants and their co-conspirators. Each of these inquiries, as well as those underlying class certification, will rely on the same set of facts and evidence. *See, e.g., In re Packaged Seafood Prods. Antitrust Litig.*, 148 F. Supp. 3d 1375, 1377 (J.P.M.L. 2015) ("These actions share factual questions arising out of an alleged conspiracy by defendants . . . to fix prices of packaged seafood products."); *In re Domestic Airline Travel Antitrust Litig.*, 140 F. Supp. 3d 1344, 1345 (J.P.M.L. 2015) ("These actions share factual questions arising out

of an alleged conspiracy by defendants . . . to fix prices for domestic airline tickets by keeping domestic flight capacity artificially low."); *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390-91 (J.P.M.L. 2014) ("All actions share common factual questions relating to the allegation of an industry-wide conspiracy spearheaded by State Farm to suppress the reimbursement rates applicable to automobile collision repair shops . . . ."). Because consolidation will also "eliminate duplicative discovery; prevent inconsistent pretrial rulings, particularly with respect to class certification; and conserve resources of the parties, their counsel and the judiciary," *Domestic Airline Travel*, 140 F. Supp. 3d at 1345, the Panel should consolidation this litigation in a single judicial district.

## II.   THE DISTRICT OF MARYLAND IS THE APPROPRIATE TRANSFEREE FORUM

Plaintiffs respectfully submit that the District of Maryland is the superior forum for the consolidated action. In deciding which is the most appropriate forum for consolidation under 28 U.S.C. § 1407, this Panel considers, inter alia, "the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." *Manual for Complex Litigation*, § 20.131 (4th ed. 2004). In light of these criteria, the District of Maryland is the most appropriate forum for the transfer and consolidation of these actions, primarily because the District of Maryland (1) has a strong factual connection to the litigation; (2) is a cost-effective and convenient forum given the nationwide aspect of this litigation; and (3) has the bandwidth and judicial expertise to manage the MDL.

### A.  The District of Maryland Has a Strong Factual Connection to the Related Actions

While no one specific location has yet emerged as the dominant site of common facts, the District of Maryland presents a "strong factual connection to this litigation," making

consolidation there proper. *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017).

First, Defendant Sinclair, named in each of the Related Action is headquartered within the District of Maryland, in Hunt Valley, Maryland. *See, e.g., In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 780 F. Supp. 2d 1379, 1382 (J.P.M.L. 2011) (transferring related actions to a district where defendant's headquarters is located). Thus, critical witnesses, documents, and information are in the District of Maryland. Plaintiff Clay Massey's emphasis on Defendant Tribune Media's prominence in the media market in an effort to demonstrate that a significant number of witnesses and documents are located in the Northern District of Illinois, is an overstatement and one that ignores the dominance of Defendant Sinclair. Motion at 8. In comparison to Tribune Media's 43 stations in 35 cities (Motion at 8), as of the filing of Plaintiff Ford's complaint, Sinclair owned and operated 193 television stations in approximately 90 cities. Thus, the District of Maryland where Sinclair is headquartered, not the Northern District of Illinois, may have substantially more evidence and witnesses.

Second, of the four defendants uniquely named in the *Clay, Dozier, Gibbons,* and *Forbes* Actions, two are headquartered in cities that are easily accessible to Maryland; Hearst Communications in New York, New York and Tegna, Inc. in McLean,Virginia. The remaining defendants, Gray Television, Inc. and Nexstar Media Group, Inc. can easily fly into one of the three airports servicing the Baltimore and D.C. areas.

Plaintiff Clay Massey's emphasis on Chicago's "robust media market" as justification for transfer to the Northern District of Illinois is misplaced. *See* Motion at 6-7. First, the size of the Chicago media market is irrelevant in a case such as this where each Related Action has pled a ***nationwide*** price-fixing scheme. Second, regardless of the relevancy, New York, New York is

the largest media market[2] and is only a short drive or train ride from to the District of Maryland. Third, the Related Actions allege that Defendants "conspire[d] through industry associations . . . conferences and meetings,"[3] that occur in cities throughout the country, including New York,[4] again making the District of Maryland the more accessible district. The District of Maryland is thus located in a region at the center of the complaints' allegations.

### B.  Cost and Inconvenience Will Be Minimized in the District of Maryland

The District of Maryland federal courthouse in Greenbelt, Maryland –where Judge Chuang presides – is a central, convenient location for the parties, counsel, and witnesses, given the national aspect of this litigation. *See In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig.*, 170 F. Supp. 2d 1356, 1358 (J.P.M.L. 2001) (transferring MDL to District of Maryland after considering the "geographic dispersal of the parties"). The District of Maryland and the Greenbelt courthouse are close to three major airports. Specifically, the courthouse is located fewer than 23 miles from Baltimore-Washington International Airport ("BWI") – one of the largest air transportation hubs in the country. BWI provides flights to 90 domestic and international destinations and is serviced by 15 major airlines.[5] In addition to BWI, the Ronald Reagan Washington Airport and the Washington Dulles International Airport also service the district and are located fewer than 20 and 40 miles from the courthouse, respectively. It also serves as a convenient hub for cost-effective travel via passenger rail, including the Amtrak

---

[2] Nielsen Media 2017-2018, Local Market Estimates, http://www.tvjobs.com/cgi-bin/markets/market2.cgi
[3] *See, e.g.,* Clay Massey Complaint ¶ 51.
[4] *See, e.g.,* the National Association of Broadcasters Show takes place in Las Vegas every year, https://www.nabshow.com/; the Television Bureau of Advertising conference takes places in New York City, https://www.tvb.org/Public/ForwardConference2018Overview.aspx.
[5] Baltimore/Washington International Thurgood Marshal Airport, *About BWI*, https://www.bwiairport.com/flying-with-us/about-bwi.

Acela rail line, regional Amtrak, and the Maryland Area Regional Commuter ("MARC") train service. Further, the Greenbelt courthouse is located near a train station serviced by both the MARC train and the Washington, DC Metro. The District of Maryland thus presents a "convenient and accessible forum for this nationwide litigation." *In re Smith & Nephew BHR & R3 Hip Implant Prods. Liab. Litig.*, 249 F. Supp. 3d 1348, 1352 (J.P.M.L. 2017); *see, e.g., In re GNC Corp. Triflex Prods. Mktg. & Sales Practices Litig. (No II)*, 988 F. Supp. 2d 1369, 1370 (J.P.M.L. 2013) ("After weighing all factors, we have selected the District of Maryland as transferee district for this litigation. This district provides a geographically central forum for this nationwide litigation, and will be convenient and accessible for the parties and witnesses. It is relatively close to defendants' headquarters in Pittsburg, Pennsylvania, where common evidence is likely to be located."); *In re Nutramax Cosamin Mktg. & Sales Practices Litig.*, 988 F. Supp. 2d 1371, 1372 (J.P.M.L. 2013) ("This district provides a geographically central forum for this nationwide litigation, and is convenient and accessible for the parties and witnesses."); *In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig.*, 170 F. Supp. 2d 1356, 1358 (J.P.M.L. 2001) (designating the District of Maryland as the transferee district when "no federal district stands out as the focal point" of this litigation). Considering these factors, the District of Maryland will provide the most cost efficient and convenient forum. *See In re Microsoft Corp. Windows Operating Sys. Antitrust Litig.*, No 1332, 2000 WL 34448877, at *3 (J.P.M.L. Apr. 25, 2000) (finding the District of Maryland to be an "accessible, metropolitan district equipped with the resources that this complex docket is likely to require.").

### C. The District of Maryland Has the Resources, Judicial Expertise, and Favorable Caseload to Expeditiously Manage This MDL

Courts in the District of Maryland have the experience and resources necessary to expeditiously manage a multidistrict litigation ('MDL") involving thousands of individuals

nationwide. *See In re Battlefield Waste Disposal Litig.*, 655 F. Supp. 2d 1374, 1375 (J.P.M.L. 2009) (transferring actions to a "transferee judge who has a caseload favorable to accepting this assignment.").

First, the District of Maryland has significantly fewer pending multidistrict litigations than the Northern District of Illinois. As of August 15, 2018, the District of Maryland had ***only three*** multidistrict litigations pending while the Northern District of Illinois had ***nine.***[6] Further, the Honorable Theodore D. Chuang, who is presiding over both of the Related Actions in the District of Maryland, currently has no pending multidistrict litigations. *See In re Gator Corp. Software Trademark & Copyright Litig.*, 259 F. Supp. 2d 1378, 1380 (J.P.M.L. 2003) (transferring to a forum that "is not currently overtaxed with other multidistrict dockets.").

Additionally, the District of Maryland has a lighter overall caseload than the Northern District of Illinois. As of March 2018, the Northern District of Illinois had 445 civil case filings per judge, while the District of Maryland had only 399 civil case filings per judge for the same period.[7] *See In re Xybernaut Corp. Sec. Litig.*, 403 F. Supp. 2d 1354, 1355 (J.P.M.L. 2005) (transferring cases to forum that "has relatively favorable caseload conditions.").

Finally, Judge Chuang is well-qualified to lead a complex antitrust MDL such as this one.[8] *See In re: Toyota Motor Cop. Unintended Acceleration Mktg., Sales Practices, Prods.*

---

[6] *See* United States Judicial Panel on Multidistrict Litigation, MDL Statistics Report – Distribution of Pending MDL Dockets by District, August 15, 2018, http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-August-15-2018.pdf.

[7] See United States Courts, United States District Courts – National Judicial Caseload Profile, http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2018.pdf.

[8] Prior to serving on the bench Judge Chuang served as a trial attorney for the Civil Rights Division in the United States Department of Justice; an Assistant US Attorney in the District of Massachusetts; the Deputy Chief Investigative Counsel for the House Oversight and Government Reform Committee; and the Chief Investigative Counsel for the House Committee on Energy

*Liab. Litig.*, 704 F. Supp. 2d 1379, 1382 (J.P.M.L. 2010) (finding the transferee judge's career prior to becoming a judge "at the very highest levels and in some of the most complex cases leaves him well prepared for a case of this magnitude.") Moreover, Judge Chuang's degree in economics makes him particularly well-suited to handle an MDL alleging violations of antitrust law, which often involve complex economic questions.[9]

Given the favorable caseload conditions in the District of Maryland and Judge Chuang's qualifications to manage this MDL, the District of Maryland has the necessary resources and expertise to conduct pretrial proceedings in the Related Actions in a just and expeditious manner. *In re Simply Orange Orange Juice Mktg. & Sales Practices Litig.*, 867 F. Supp. 2d 1344, 1345 (J.P.M.L. 2012) ("centralization in this district permits the Panel to assign the litigation to a less-utilized district with an experienced judge who is not presently overseeing a multidistrict litigation.").

### D.  Other Factors Weigh in Favor of Consolidation in the District of Maryland

In addition to the considerations described above, three other factors also support consolidation of the MDL in the District of Maryland. First, to date, no substantial activity has taken place in any of the Related Actions. Thus, no one case is procedurally better positioned than any of the other Related Actions such that consolidation in the Northern District of Illinois could take advantage of more advanced proceedings. *See, e.g.*, *In re Dealer Mgmt. Sys. Antitrust Litig.*, 291 F. Supp. 3d 1367, 1369 (J.P.M.L. 2018) (selecting transferee court for its accessibility and the judge's experience, even though the first-filed action and a "somewhat more advanced" action were brought in other districts).

---

and Commerce. *See* United States District Court, District of Maryland, Theodore D. Chuang, District Judge, http://www.mdd.uscourts.gov/theodore-d-chuang-district-judge.

[9] Judge Chuang holds a B.A. in Economics from Harvard College. *Id.*

Second, the DOJ's related investigation will likely be based out of its Washington D.C. headquarters,[10] and the resulting enforcement action was brought in the District of Columbia. *In re Polyurethane Foam Antitrust Litig.*, 753 F. Supp. 2d 1376, 1377-78 (J.P.M.L. 2010) (selecting transferee district in part because of the presence of a government investigation in a neighboring division); *In re Generic Drug Pricing Antitrust Litig.*, 227 F. Supp. 3d 1402, 1404 (J.P.M.L. 2016) (noting that the transferee district was the location of a federal government investigation and therefore "a significant proportion of potential witnesses and documentary evidence will be located within or near the district."); *In re Foundry Resins Antitrust Litig.*, 342 F. Supp. 2d 1346, 1347 (J.P.M.L. 2004) (when docket conditions did not favor any district, the existence of a government investigation in another forum weighed against transfer to a different district). Thus, transfer to the District of Maryland is likewise supported by its close proximity (fewer than 15 miles) to Washington, D.C. *See In re Battlefield Waste Disposal Litig.*, 655 F. Supp. 2d 1374, 1375 (J.P.M.L. 2009) (designating the District of Maryland as the transferee district in part because it had a nexus to the claims and because of "its proximity to federal government facilities in . . . Washington, D.C.").

Finally, Plaintiff Miller filed the first Related Action in the District of Maryland. The Panel has repeatedly held that it is appropriate to give "the first-filed criterion some weight in selecting a transferee district." *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, 763 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011) (quotations omitted). Consistent with this well-settled principle, the Panel often consolidates actions in the district where the action was first filed. *See,*

---

[10] The Federal Communication Commission is based in Washington, D.C. and the DOJ investigation stems from the FCC's review of the Sinclair-Tribune merger. *See* Drew Fitzgerald & Keach Hagey, *Justice Department Investigates TV Station Owners Over Advertising Sales*, WSJ, July 26, 2018, https://www.wsj.com/articles/justice-department-investigates-tv-station-owners-over-advertising-sales-1532633979.

*e.g.*, *In re Epipen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 268 F. Supp. 3d 1356, 1360 (J.P.M.L. 2017) (selecting district where "the first-filed action is pending"); *In re Sierra Wireless, Inc., Sec. Litig.*, 387 F. Supp. 2d 1363, 1364-65 (J.P.M.L. 2005) (consolidating actions in first-filed district); *In re Methyl Methacrylate (MMA) Antitrust Litig.*, 435 F. Supp. 2d 1345, 1347 (J.P.M.L. 2006) (same).

## CONCLUSION

For the foregoing reasons and those articulated in the attendant motion, Plaintiff Ford respectfully requests that the Related Actions, and, if filed, any tag-along actions, should be consolidated pursuant to 28 U.S.C. § 1407 and transferred to the United States District Court for the District of Maryland before Judge Chuang.

Dated: August 23, 2018                                   Respectfully submitted,

*/s/ Megan E. Jones*

**HAUSFELD LLP**
600 Montgomery St #3200
San Francisco, CA  94111
Tel: (415) 633-1908
Fax: (415) 358-4980
Email: mjones@hausfeld.com