# BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: Local TV Advertising Antitrust Litigation | MDL No. 2867 |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFF CLAY MASSEY & ASSOCIATES, P.C. FOR THE TRANSFER OF RELATED ACTIONS TO THE NORTHERN DISTRICT OF ILLINOIS FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407

Plaintiff Clay, Massey & Associates, P.C. ("Movant"), in the action captioned *Clay, Massey & Associates, P.C., et al. v. Gray Television, Inc., et al.*, Case No. 18-cv-5197 (N.D. Ill. July 30, 2018), respectfully submits this Reply Memorandum of Law in support of its Motion pursuant to 28 U.S.C. § 1407 to transfer and coordinate or consolidate related actions to the Northern District of Illinois.

## BACKGROUND

The parties before the Panel all agree that centralization of the six related actions at issue in this proceeding (collectively, the "Related Actions") is appropriate at this time.[1] Therefore, the only issue before the Panel is the most appropriate district in which the Related Actions should be

---

[1] Since the filing of this Motion on July 31, 2018, four additional Related Actions have been filed (*Randal S. Ford d/b/a Ford Firm v. Sinclair Broadcast Group, Inc., et al.,* Case No. 1:18-cv-02372 (D. Md. Aug. 2, 2018); *Dozier Law Firm LLC v. Gray Television, Inc., et al.,* Case No. 1:18-cv-05392 (N.D. Ill. Aug. 8, 2018); *Gibbons Ford, LP v. Gray Television, Inc., et al.,* Case No. 1:18-cv-05555 (N.D. Ill. Aug. 14, 2018); *Forbes v. Gray Television, Inc., et al.,* Case No. 1:18-cv-05708 (N.D. Ill. Aug. 21, 2018)). To date, four Related Actions have been filed in the Northern District of Illinois and two in the District of Maryland.

centralized. Notably, only one party before the Panel favors the District of Maryland (the "Maryland Plaintiff").[2] Four plaintiffs and each of the seven named Defendants[3] support the Northern District of Illinois as the transferee district. Moreover, the Maryland Plaintiff's response is premised on misplaced assumptions regarding convenience, an overstatement of the significance of the first-filed Related Action, and a misreading of docket statistics. For these reasons, as well as those detailed in Movant's initial submission, the Northern District of Illinois is best suited for centralization of the Related Actions.

## ARGUMENT

### I.     Transfer and Coordination or Consolidation of the Related Actions is Undoubtedly Appropriate

Under 28 U.S.C. § 1407(a), civil actions pending in different district courts and involving "one or more common questions of fact" may be "transferred to any district for coordinated or consolidated pretrial proceedings." Transfer is appropriate to serve "the convenience of the parties and witnesses" and to "promote the just and efficient conduct" of the pending actions. *Id.* Here, all parties support Movant's Motion, insofar as it seeks centralization of the Related Actions.

### II.     The Related Actions Should be Transferred to and Coordinated or Consolidated in the Northern District of Illinois

In selecting the appropriate transferee district, the Panel uses no single factor, but considers where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and

---

[2] On August 23, 2018, Plaintiff Randal S. Ford d/b/a Ford Firm filed an untimely Response to Movant's Motion, which need not be considered by the Panel. "Failure to respond to a motion shall be treated as that party's acquiescence to it." RULES FOR MULTIDISTRICT LITIGATION, Rule 6.1(c). Nevertheless, the Response raises no novel arguments which need refuting.

[3] Sinclair Broadcast Group, Inc. ("Sinclair"); Tribune Media Company, Tribune Broadcasting Company (collectively, the "Tribune Defendants"), Gray Television, Inc., TEGNA Inc., Hearst Communication, and Nexstar Media Group, Inc. (collectively, the "Defendants").

inconvenience will be minimized, and the experience, skill, and caseloads of available judges. *Manual for Complex Litig., Fourth* § 20.131, 2004 WL 258762, at *2. These factors strongly favor the Northern District of Illinois and the Maryland Plaintiff's response does not persuasively argue to the contrary. Furthermore, the Defendants' submissions supporting the Northern District of Illinois provide additional reasons why the Northern District of Illinois is the most appropriate venue.

### A.      The First Action Being Filed in the District of Maryland Carries Little Weight

The Maryland Plaintiff urges transfer to Maryland in part because the first Related Action was filed in that district. *See* Miller Response at p. 8. Although the Panel has sometimes "given the first-filed criterion some weight in selecting a transferee district," the Northern District of Illinois should be favored here because it has a "special connection" to the parties and the litigation's subject matter. *In re Halftone Color Separations ('809) Patent Litig.*, 547 F. Supp. 2d 1383, 1384–85 (J.P.M.L. 2008) (transferring related actions to the Central District of California despite first action having been filed elsewhere). Specifically, two Defendants are headquartered in Chicago and Chicago's media market is one of the largest in the nation. Maryland's only connection is the location of Defendant Sinclair's headquarters.

Additionally, four out of six of the Related Actions were filed in the Northern District of Illinois. This factor strongly weighs in favor of centralization in that forum. Moreover, none of the Related Actions has moved beyond the initial pleadings such that either forum is "thoroughly familiar with all factual issues raised in this litigation." *Cf. In re Air W., Inc. Sec. Litig.*, 384 F. Supp. 609, 611 (J.P.M.L. 1974) (selecting transferee district in which discovery had "progressed steadily"). In light of the Northern District of Illinois' connections to this litigation and geographically central location, it is undoubtedly the "center of gravity" and the most convenient

forum. *In re HSBC Bank USA, N.A., Debit Card Overdraft Fee Litig.*, 949 F. Supp. 2d 1358, 1359 (J.P.M.L. 2013). On these facts, the location of the first-filed action is of little significance.

**B.      The District of Maryland Is Not the Most Convenient Forum to Litigate the Related Actions**

The Maryland Plaintiff argues that the District of Maryland is the most appropriate forum for the Related Actions based in large part on the premise that it is convenient and because discovery in the pending actions will necessarily be centered in that district. *See* Miller Response at pp. 6-7, 9 ("The Related Actions have a strong geographic nexus to the District of Maryland because it possesses a strong factual connection to this litigation and is a geographically central and accessible forum that is relatively close to defendants' various headquarters.") (internal quotations and citations omitted). More specifically, the Maryland Plaintiff points to the fact that Defendant Sinclair is headquartered in Maryland and two other Defendants are headquartered in cities that are "easily accessible to Maryland." The Maryland Plaintiff further argues that the District of Maryland is the more convenient forum because it has airports and various train systems.

**1.      The Northern District of Illinois is More Accessible to the Majority of the Parties and Law Firms**

As a threshold matter, the Maryland Plaintiff's convenience arguments are particularly unconvincing because there are **_two_** Defendants—the Tribune Defendants—located in Chicago, versus only **_one_** Defendant located in Maryland.[4] Moreover, the only party before the Panel that

---

[4] The Maryland Plaintiff asserts that "Plaintiff Clay overstates Defendant Tribune Media's . . . role in the conspiracy." *See* Miller Response at p. 6. While this mischaracterizes Movant's opening Motion, this argument falls flat because discovery has not yet begun and very limited details regarding the Department of Justice's ("DOJ") investigation have been publically released, it is impossible to credibly discern each Defendant's precise role in the alleged conspiracy at this early stage.

may be required to produce witnesses and documents located in Maryland (if any)—does not oppose centralization in the Northern District of Illinois. *See* Defendants' Response at p. 1 ("[W]e agree with plaintiff Clay, Massey & Associates, P.C. that the Northern District of Illinois has the capability and resources to preside over this type of multidistrict litigation."). Nevertheless, the Maryland Plaintiff asserts that because two Defendants are located in New York and one in Virginia, Maryland's train systems would provide convenient travel options for those Defendants. However true that may be, it ignores that travel via hourly flights offered from New York to Chicago are typically shorter and more convenient than utilizing Maryland's Amtrak and MARC trains. Moreover, the Virginia Defendant can quickly and conveniently reach Chicago on one of over 70 nonstop daily flights leaving from airports in the Washington, D.C. area. Finally, there are three law firms affiliated with the case located in Chicago and only one in Maryland. With most of the lawyers involved located in either New York or California, Chicago is a far more convenient forum than Maryland.

Similarly, the Maryland Plaintiff's argument that the District of Maryland is more accessible because of its airports and train systems is simply incorrect. The Northern District of Illinois courthouse is located in downtown Chicago, in the middle of the country, and can be reached in minutes from either of Chicago's two international airports, thereby "provid[ing] a geographically central forum for this nationwide litigation that will be convenient and accessible for the parties and witnesses." *In re: Opana ER Antitrust Litig.*, 65 F. Supp. 3d 1408, 1409 (J.P.M.L. 2014).[5]

---

[5] *See also In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 201 F. Supp. 3d 1375, 1378 (J.P.M.L. 2016) (finding that the Northern District of Illinois "provides a convenient and accessible forum for actions filed throughout the country regarding products sold nationwide"); *In re Refund Anticipation Loan Litig.*, 856 F. Supp. 2d 1336, 1337 (J.P.M.L. 2012) (Northern District of Illinois is "convenient and centrally located"); *In re Capital One Tel.*

## 2. The Fact that the Department of Justice Has an Office in Washington, D.C. does not Support Centralization in the District of Maryland

The Maryland Plaintiff also argues that the District of Maryland is the most appropriate jurisdiction because of its "close proximity . . . to Washington, D.C[,]" where the Department of Justice main office is located. *See* Miller Response at p. 7. Notably, the Maryland Plaintiff primarily supports this argument with case law in which the JPML transferred related actions to the *same* district in which the office of a government investigation was located and not to a district that was merely "near" the location of the government office handling the matter. Notwithstanding

---

*Consumer Prot. Act Litig.*, 908 F. Supp. 2d 1366, 1368 (J.P.M.L. 2012) ("Northern District of Illinois offers a relatively central and convenient forum for the involved parties and counsel"); *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1352 (J.P.M.L. 2012) (Northern District of Illinois "provides a convenient and accessible forum for this litigation in which actions have been filed throughout the country regarding a product marketed nationwide"); *In re Unified Messaging Solutions LLC Patent Litig.*, 883 F. Supp. 2d 1340, 1342 (J.P.M.L. 2012) (Northern District of Illinois is "easily accessible and centrally-located"); *In re Innovatio IP Ventures, LLC, Patent Litig.*, 840 F. Supp. 2d 1354, 1355 (J.P.M.L. 2011) (Northern District of Illinois is a "readily accessible district"); *In re JP Morgan Chase Bank Home Equity Line of Credit Litig.*, 716 F. Supp. 2d 1363, 1364 (J.P.M.L. 2010) ("Northern District of Illinois provides a convenient forum"); *In re Text Messaging Antitrust Litig.*, 588 F. Supp. 2d 1372, 1373 (J.P.M.L. 2008) (Northern District of Illinois is a "relatively central forum for this nationwide litigation"); *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, 408 F. Supp. 2d 1354, 1355 (J.P.M.L. 2005) (Northern District of Illinois a "geographically central district will be a convenient location for a litigation already nationwide in scope"); *In re Ocwen Fed. Bank FSB Mortg. Servicing Litig.*, 314 F. Supp. 2d 1376, 1379 (J.P.M.L. 2004) ("Illinois district is geographically centrally located for these actions which are pending throughout the United States"); *In re McDonald's Corp. Promotional Games Litig.*, 192 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (Northern District of Illinois is a "geographically central district [and] will be a convenient location for a litigation already nationwide in scope"); *In re Am. Online, Inc., Version 6.0 Software Litig.*, 162 F. Supp. 2d 690, 691 (J.P.M.L. 2001) (Northern District of Illinois is a "geographically central district [that] will be a convenient location for a litigation already nationwide in scope"); *In re "Factor VIII or IX Concentrate Blood Products" Prods. Liab. Litig.*, 853 F. Supp. 454, 455 (J.P.M.L. 1993) ("Chicago is a geographically central location for this nationwide litigation"); *In re Multidistrict Private Civil Treble Damage Litigation Involving Library Editions of Children's Books*, MDL Nos. 2, 5, 6 & 7, 297 F. Supp. 385, 387 (J.P.M.L. 1968) (MDL transfer to Northern District of Illinois); *In re Aimster Copyright Litig.*, 177 F. Supp. 2d 1380, 1382 (J.P.M.L. 2001) (MDL transfer to Northern District of Illinois).

this distinction, the cases relied on by the Maryland Plaintiff are inapposite for various other reasons. *See, e.g., In re Generic Drug Pricing Antitrust Litig.*, 227 F. Supp. 3d 1402, 1404 (J.P.M.L. 2016) (all responding parties, except one plaintiff, supported centralization in the district in which the federal criminal investigation took place, whereas, here, the opposite ratio is true; all responding parties other than the Maryland Plaintiff favor the Northern District of Illinois); *In re Foundry Resins Antitrust Litig.*, 342 F. Supp. 2d 1346, 1347 (J.P.M.L. 2004) (seven actions filed in the district in which the government investigation and federal grand jury was located and only two filed in other suggested transferee district; responding defendants also supported transfer to the district selected by JPML); *In re Cement & Concrete Antitrust Litig.*, 437 F. Supp. 750, 752-53 (J.P.M.L. 1977) (federal district in which the government investigation took place was also the district in which the "overwhelming majority of plaintiffs . . . elect[ed] to file suit," whereas, here, not even a majority of Plaintiffs filed in the District of Maryland, let alone an "overwhelming majority").

The few cases cited by the Maryland Plaintiff to argue that the mere proximity of the Baltimore courthouse to Washington D.C. weighs in favor of centralization are similarly misplaced. *In re: Battlefield Waste Disposal Litig.*, 655 F. Supp. 2d 1374, 1375 (J.P.M.L. 2009) (all parties supported centralization in selected district); *In re 1980 Decennial Census Adjustment Litig.,* 506 F. Supp. 648, 651 (J.P.M.L. 1981) (coordinating and consolidating actions in the District of Maryland where no district "in which an action w[as] pending offer[ed] a strong nexus to the common factual questions in the litigation, and little discovery on these questions could be expected to occur in any of them," whereas here, discovery can be expected to occur in the Northern District of Illinois).

### C. Docket Management Statistics, Judicial Resources, and Judicial Expertise of the Northern District of Illinois all Support Transfer to that District

Finally, the Maryland Plaintiff argues that as of July 16, 2018, the District of Maryland had only four multidistrict litigations pending, whereas the Northern District of Illinois had ten. *See* Miller Response at pp. 10-11.[6] While Movant agrees that Judge Chuang is highly qualified to oversee the Related Actions, the Maryland Plaintiff ignores many of the strong attributes of the Northern District of Illinois that make it at least as qualified to oversee this ligation. For example, while the Northern District of Illinois may be currently handling more multidistrict litigations, it also has 30 active judges,[7] compared to ten in the District of Maryland.[8] Moreover, the fact that the JPML entrusts the Northern District of Illinois to handle a high volume of MDLs on a regular basis is a testament to its substantial experience managing complex class actions.[9] In fact, the Northern District of Illinois has handled some of the most significant antitrust MDLs in history.[10]

---

[6] Curiously, the Maryland Plaintiff's docket statistics are outdated, even though its Response was filed on August 21, 2018 and the JPML updated its information on August 15, 2018. The Northern District of Illinois only has nine multidistrict litigations currently pending. *See* http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-August-15-2018.pdf.

[7] *See* http://www.ilnd.uscourts.gov/Judges.aspx?eFRCR82Cx5Y=.

[8] *See* http://www.mdd.uscourts.gov/district-judges.

[9] *See*, *e.g.*, *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, MDL No. 2109, 657 F. Supp. 2d 1371 (J.P.M.L 2009); *In re Dairy Farmers of America (Cheese) Antitrust Litig.*, MDL No. 2031, 626 F. Supp. 2d 1348 (J.P.M.L 2009); *In re Text Messaging Antitrust Litig.*, MDL No. 1997, 588 F. Supp. 2d 1372 (J.P.M.L 2008); *In re Potash Antitrust Litig.*, MDL No. 1996, 588 F. Supp. 2d 1364 (J.P.M.L 2008); *In re Aftermarket Filters Antitrust Litig.*, MDL No. 1957, 572 F. Supp. 2d 1373 (J.P.M.L. 2008); *In re BP Prods. N. Am., Inc.*, MDL No. 1946, 560 F. Supp. 2d 1377 (J.P.M.L. 2008); *In re Sulfuric Acid Antitrust Litig.*, No. 1536, 270 F. Supp. 2d 1379 (J.P.M.L. 2003); *In re Amino Acid Lysine Antitrust Litig.*, MDL No. 1083, 910 F. Supp. 696 (J.P.M.L. 1995); *In re Brand Name Prescription Drug Antitrust Litig.*, MDL No. 997 (J.P.M.L. 1994); *In re Gas Meter Antitrust Litig.*, No. 360, 464 F. Supp. 391 (J.P.M.L. 1979); *In re Uranium Industry Antitrust Litig.*, No. 342, 466 F. Supp. 958 (J.P.M.L. 1979); *In re Folding Carton Antitrust Litig.*, MDL No. 250, 415 F. Supp. 384 (J.P.M.L. 1976); *In re Commodities Exchange Rate Antitrust Litig.*, No. 99, 342 F. Supp. 1405 (J.P.M.L. 1972); *In re Government Auto Fleet Sales Antitrust Litig.*, MDL No. 65, 328 F. Supp. 218 (J.P.M.L. 1971).

[10] *See, e.g.*, *In re Amino Acid Lysine Antitrust Litig.*, MDL No. 1083; *In re Brand Name Prescription Drug Antitrust Litig.*, MDL No. 997; *In re Uranium Industry Antitrust Litig.*, MDL No. 342.

In addition, the Panel has held that the Northern District of Illinois "is equipped with the resources that this complex litigation will likely require." *See, e.g., In re Sulfuric Acid Antitrust Litig*., 270 F. Supp. 2d 1379, 1380 (2003) ("In concluding that the Northern District of Illinois is an appropriate forum for this docket, we note that the Illinois district . . . is equipped with the resources that this complex antitrust docket is likely to require."). The Everett M. Dirksen U.S. Courthouse in Chicago is among the largest and most sophisticated district courts in the country. The 30-story glass and steel high-rise underwent an estimated $110 million renovation project in 2012, which, among other things, added four two-story courtrooms and four magistrate courtrooms, as well as chambers, offices, and other facilities.[11] The courthouse has conference rooms seating up to 60 people with wireless microphone systems, conference phones, computer data outlets, white boards, ceiling-mounted projectors and screens, and digital video capability.[12]

## CONCLUSION

Accordingly, Plaintiff Clay, Massey & Associates, P.C. respectfully requests that the Panel grant its Motion to transfer all Related Actions to the Northern District of Illinois for coordinated or consolidated pretrial proceedings.

---

[11]    *See*    http://www.turnerconstruction.com/news/item/166b/Turner-Selected-by-US-General-Services-Administration-for-the-110-Million-Renovation-of-the-E-M-Dirksen-US-Courthouse-in-Chicago-IL.

[12] *See* www.gsa.gov/emdct.

Dated: August 28, 2018

By: */s/ Hollis Salzman*
Hollis Salzman
Kellie Lerner
Nahid Shaikh
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Tel.: (212) 980-7400
Fax: (212) 980-7499
*hsalzman@robinskaplan.com*
*klerner@robinskaplan.com*
*nshaikh@robinskaplan.com*

Craig K. Wildfang
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN
(612) 349-8500
*kcwildfang@robinskaplan.com*

Aaron M. Sheanin
Tai S. Milder
**ROBINS KAPLAN LLP**
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
(650) 784-4040
*asheanin@robinskaplan.com*
*tmilder@robinskaplan.com*

Steven A. Kanner
Michael J. Freed
Robert J. Wozniak
**FREED KANNER LONDON & MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
(224) 632-4500
*skanner@fklmlaw.com*
*mfreed@fklmlaw.com*
*rwozniak@fklmlaw.com*

*Counsel for Plaintiff Clay, Massey & Associates P.C. and the Proposed Class*